HARPER LAW, PLC
Jon V. Harper (1378)
Denise Dalton (9610)
Post Office Box 581468
Salt Lake City, Utah 84158
Telephone: 801-910-4357
Email: jharper@jonharperlaw.com

Attorneys for Plaintiff
Additional Counsel Listed on Signature Page

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| ALEJANDRO CALLEGARI, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>BLENDTEC, INC.<br><br>Defendant. | PROPOSED CLASS ACTION<br><br>**COMPLAINT**<br><br>JURY DEMANDED<br><br>Case No. 2:18-cv-00308-EJF<br><br>Magistrate Judge Evelyn J. Furse<br><br>UTAH CONSUMER SALES PRACTICES ACT, MAGNUSON-MOSS WARRANTY ACT, AND STATE LAW CONSUMER PROTECTION AND WARRANTY CLAIMS |
|---|---|

## INTRODUCTION

1. Plaintiff Alejandro Callegari brings this class action on behalf of himself and similarly-situated purchasers of Blendtec blenders.

2. Defendant Blendtec Inc. ("Blendtec") manufactures and sells a series of blenders: devices designed to chop, puree, liquefy, and otherwise process foodstuffs to be used in drinks and food preparation, which it markets under its Blendtec trademark (the "Blenders").

3. Blendtec claims that its Blenders are "Powerfully Advanced," and thus able to command a price premium for them premised upon its claims of specific and quantified power representations for these products as measured in units of "horsepower" or "HP," a common abbreviation. Although Blendtec claims and represents that the horsepower of each model of its Blenders falls between 3.0 HP and 3.8 HP, each and every one of these representations is grossly inaccurate and materially overstates the true horsepower and power output of each of these devices.

4. Blendtec's horsepower representations appear prominently on its product packaging, in its point of sale and marketing materials, and on Blendtec's website. In fact, if consumers seek to compare Blender models on Blendtec's website, "horsepower" is the first criteria Blendtec presents to them for comparison. www.blendtec.com/blenders/compare, last accessed January 31, 2018.

5. All of Blendtec's false and overstated horsepower representations mislead consumers into believing the Blenders are much more powerful, and therefore much more capable, than they actually are.

6. In testing conducted by Plaintiff's engineering consultants, Blendtec's Blenders were able to achieve less than 25% of the horsepower claimed by Blendtec. Stated differently, Blendtec overstates the horsepower ratings of its Blenders by over 400%.

7. As a result of Blendtec's marketing as described above, Plaintiff brings this class action asserting claims against Blendtec for violations of consumer protection and false advertising

statutes, breach of warranty, and unjust enrichment on behalf of himself, and all others similarly situated.

## JURISDICTION

8. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. 1332(d), because Defendant is a citizen of the State of Utah; Plaintiff is a citizen of the State of Florida; there are more than 100 class members in many different states; and the aggregate amount in controversy exceeds $5 million.

9. Venue is proper in this Court because Blendtec's headquarters is in this District, the decisions concerning the design, marketing and advertising of the Blenders were made in this District, and Defendant advertised and sold the Blenders in this District.

## THE PARTIES

10. Alejandro Callegari is a resident of the State of Florida. In July of 2017, Mr. Callegari purchased a "Blendtec Classic 475 120v Blender" online and used it for personal, family, or household purposes. The power of the Blender was a material factor in Mr. Callegari's purchase decision. Mr. Callegari relied on the representations on the Blender's packaging and on Blendtec's website about the Blender's horsepower. Mr. Callegari is an avid cook and intended to use the Blender frequently. However, when in use, he observed the Blender was under-powered as compared to his reasonable expectations based upon the horsepower representations with which the machine was sold. Mr. Callegari's use of the Blender declined rapidly after he observed the true power in the Blender. Had Mr. Callegari known that the horsepower representations were false and that the Blender was not as powerful as advertised and represented, he would not have purchased the Blender or paid as much as he did for it.

11. Defendant Blendtec Inc. is incorporated in Utah, and maintains its executive offices and virtually all of its operational facilities in Orem, Utah. From its base in Utah, Blendtec designs, manufactures, markets, distributes and sells the Blenders, and upon information and belief conducts or otherwise directs its product testing, marketing, and packaging for its Blendtec Blenders.

**FACTS**

**The Term "Horsepower"**

12. Horsepower, often abbreviated as "HP", is an objective engineering term used to denote the power output of an electric motor, is a function of a machine's torque and rotational speed, and is represented in the following equation, where P is power in horsepower, torque is measured in foot-pounds, and force is measured in speed of rotations per minute:

$$P(hp) = torque(ft * lb) * force(RPM)/5252$$

13. Horsepower can also be calculated as a function of an electric motor's current, efficiency, and voltage, as represented by the following equation, where P is power in horsepower, V is voltage input into the device, I is current in amps used by the motor, and Eff. is the efficiency of the motor:

$$P(hp) = V * I * Eff/746$$

**Blendtec's Horsepower Misrepresentations**

14. Blendtec markets its Blenders with objective numerical horsepower representations, as stated variously in units of "Horsepower," "HP," "Peak Horsepower," or "Peak HP." All of Blendtec's such representations are false, and none of the Blenders purchased by

Plaintiff and the Class produce the specified amount of power which is represented and warranted by Blendtec.

15. For example, on the product packaging of each and every Blendtec Blender, Defendant makes specific "Peak HP" claims of the Blenders power and highlights the information in red, as shown below (yellow arrow added for demonstrative purposes):





16. A reasonable consumer would understand the term "peak horsepower" to mean the maximum horsepower reachable during the Blender's operation.

17. This consumer understanding comports with industry definitions. The Power Tool Institute, a forty-five year old lobbying and education organization that represents the power tool industry, defines "peak horsepower" as "the maximum output that can be developed in actual use."

18. Blendtec Blenders do not come close to reaching the represented "Peak Horsepower," in actual use, and all such claims made in connection with the marketing and sale of its Blenders are incorrect and misleading as to the actual capabilities of these devices. The facts and circumstances known to Blendtec at the time they were developing marketing materials, creating the packaging for the Blenders, and preparing other sales materials put them on notice that the representations were false.

19. On its website, Blendtec lists the horsepower of Blenders without the "peak" qualification:



20. These representations are similarly false.

21. Blendtec's Blenders do not come close to reaching their either their advertised horsepower or advertised peak horsepower, and all such claims are incorrect and misleading as to the actual capabilities of the machine.

**Power Testing by Plaintiff's Consulting Engineers**

22. Prior to filing this Complaint, Plaintiff's counsel retained electrical and mechanical engineers to conduct multiple power tests on the motors contained in the Blenders in their laboratories, and measured the results utilizing generally accepted engineering methodologies.

23. These product tests concluded that no Blender exceeded more than 25% of the power output claimed by Blendtec, and that each power representation used to market the Blenders was materially overstated and false.

24. Even in theory, Blendtec's horsepower claims are impossible. There is not enough energy in the form of electricity coming from a standard household electrical outlet to generate the amount of output horsepower claimed by Blendtec for any period of time.

## CLASS ACTION ALLEGATIONS

25. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this suit as the representative of a class of all individuals in the United States who, within the relevant statute of limitations periods, purchased any Blendtec Blender (the "Class").

26. Specifically excluded from the Class are all federal judges who handle this matter, and members of their families within the first degree of consanguinity, and the officers, directors and counsel of record of Defendants, and all employees of Defendants. Also excluded from the Class are persons or entities that purchased Blendtec Blenders for resale.

27. Plaintiff reserves the right to amend or modify the definitions of the Class with greater specificity, further division into subclasses, or limitation to particular issues as discovery and the orders of this Court warrant.

28. Members of the Class are so numerous that their individual joinder herein is impracticable. While the exact number of Class members is presently unknown, and can only be ascertained through appropriate discovery, Plaintiff believes the members of the Class number in at least the tens of thousands.

29. Common questions of law and fact exist as to members of the Class and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

- whether Defendant misrepresented the peak horsepower, and/or horsepower of the Blendtec Blenders;

- whether Defendant knew their claims regarding the Blendtec Blenders were false and/or misleading;

- whether Defendant breached express warranties by making the misrepresentations;

- whether Defendant breached implied warranties by making the misrepresentations;

- whether Defendant has been unjustly enriched as a result of their misrepresentations;

- whether Defendant's misrepresentations violate the Magnuson-Moss Act, 15 U.S.C. § 291, et seq.;

- whether Defendant's actions as described above violate the consumer fraud laws of individual states; and

- whether Class members are entitled to damages, restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

30. Plaintiff's claims are typical of the claims of Class because Plaintiff purchased a Blendtec Blender and suffered a loss of money as a result of his purchase. His claims have the same essential characteristics as the claims of the members of the Class and are based on the course of conduct and similar legal theories. The members of the Class have suffered the same type of injury and possess the same interests as Plaintiff. A single resolution of these claims would be preferable to a multiplicity of similar actions.

31. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he has retained competent counsel experienced in

prosecuting class actions, and he and his counsel intend to prosecute this action vigorously. The interests of Class will be fairly and adequately protected by Plaintiff and his counsel.

32. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class. Individual members of the Class may lack the resources to undergo the burden and expense of individual prosecutions of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

33. This suit is maintainable as a class action under Fed. R. Civ. P. 23 (b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Classes in their entirety.

34. This suit is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

35. Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief. Here, Defendant has engaged in conduct resulting in misleading consumers about the power of its Blenders. Since Defendant's conduct has been uniformly directed at all

consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct. Plaintiff does not know if he can rely on Defendant's label claims in the future, but would purchase the Blender again if it could conform to its statements.

36. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), and the injunctive Class satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

   a. <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable. Defendant's Blenders have been purchased by thousands of people throughout the United States;

   b. <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers. Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction. Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

      i. Resolution of the issues presented in the 23(b)(3) class;

      ii. Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

iii. Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel its Blenders.

c. Typicality: Plaintiff's claims are typical of the claims of the injunctive Class because their claims arise from the same course of conduct (*i.e.*, Defendant's deceptive and misleading marketing, labeling, and advertising practices). Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, he purchased a Blender that was sold unfairly and deceptively to consumers throughout the United States.

d. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class. His consumer protection claims are common to all members of the injunctive Class and he has a strong interest in vindicating his rights. In addition, Plaintiff and the Class are represented by counsel who are competent and experienced in both consumer protection and class action litigation.

37. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (*i.e.*, Defendant has marketed its Blenders using the same misleading and deceptive labeling to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class, as Defendant would be prevented

from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the power of its Blenders.

## COUNT I
## VIOLATION OF THE UTAH CONSUMER SALES PRACTICES ACT
**(Brought on behalf of the national class)**

38. Plaintiff adopts and incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

39. The Utah Consumer Sales Practices Act makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction."

40. Plaintiff is a "person" under the Utah Consumer Sales Practices Act, Utah Code § 13-11-3(5).

41. Defendant is a "supplier" of the blenders within the meaning of Utah Code § 13-11-3(6).

42. The sale of the Blenders to Plaintiff and the Class is a "consumer transaction" within the meaning of Utah Code § 13-11-3(2).

43. Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has … performance characteristics, …if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, grade, style, or model, if it is not." Utah Code § 13-11-4.

44. An "unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code § 13-11-5.

45. By making false representations about the Blenders' horsepower, Defendant has misrepresented the "performance characteristics," "standard," and "grade" of the blenders.

46. In addition, the misrepresentations constitute an "unconscionable act or practice in connection with a consumer transaction."

47. As a direct and proximate result of Defendant's acts and omissions, Plaintiff and Class Members suffered damages and ascertainable losses, in amounts to be determined at trial, by paying more for Blenders than they would have had or by purchasing Blendtec Blenders when they would not have if the true facts were known.

## COUNT II
## BREACH OF EXPRESS WARRANTY UNDER UTAH LAW
### (Utah Code §§ 70A-2-313 and 70A-2A-210)

48. Plaintiff adopts and incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

49. The Blenders were at all times "goods" under Utah law.

50. Blendtec was at all relevant time a "merchant" and "seller" of the Blenders under Utah law.

51. Blendtec made representations concerning the horsepower of its Blenders on the Blenders' packaging and on Blendtec's website. These representations constitute express warranties under Utah law.

52. Blendtec breached these express warranties because the Blenders cannot reach the claimed horsepower in actual use.

53. As a result of Blendtec's breach, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## UNDER UTAH LAW
**(Utah Code §§ 70A-2-314 and 70A-2A-212)**

54. Plaintiff adopts and incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

55. Under Utah law, a warranty of merchantability is implied in consumer transactions.

56. The Blenders were at all times "goods" under Utah law.

57. Blendtec was at all relevant time a "merchant" and "seller" of the Blenders under Utah law.

58. The Blenders did not conform to the representations on their packaging.

59. Blendtec had actual knowledge that the Blenders did not conform to the representations on their packaging.

60. The facts and circumstances known to Blendtec gave them notice that their horsepower claims were false and, further, that they misrepresented the Blenders' horsepower and/or peak horsepower on all product packaging and on their website.

61. As a result of Blendtec's breach, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT IV
## VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
**(By the Class Against Blendtec)**

62. Plaintiff adopts and incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

63. Blendtec Blenders are consumer products as defined in 15 U.S.C. § 2301(1).

64. Plaintiff and members of the Class are consumers as defined in 15 U.S.C. § 2301(3).

65. Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

66. In connection with the sale of Blendtec Blenders, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), including representations on the product packaging, labeling, and marketing materials, which warranted that Blendtec Blenders had certain specifications and capabilities relating to their horsepower. These statements are untrue, as detailed above, and the machines actually delivered by Defendant to Plaintiff and the Class did not comply with their stated specifications, and were unable to perform at those specifications in actual use.

67. Blendtec's warranties are generally 8 to 10 years in length.

68. By reason of Defendant's breach of the express written warranties stating that the Blendtec Blenders had certain "peak horsepower", Defendant violated the statutory rights of Plaintiff and members of the Class pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., thereby damaging Plaintiff and the members of the Class.

## COUNT V
## BREACH OF EXPRESS WARRANTY
### (By the Class Against Blendtec)

69. Plaintiff adopts and incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

70. Defendant expressly warranted in their marketing, advertising and promotion of the Blendtec Blenders that the products had certain horsepower specifications. These statements are untrue, as detailed above, and the Blenders delivered by Defendant to Plaintiff do not conform to

the promised specifications, are incapable of operating at the promised specifications in actual use, and are incapable of performing the same work as machines actually meeting such specifications.

71. Plaintiff and members of the Class purchased the Blendtec Blenders based upon the above express warranties.

72. Defendant breached its express warranties by selling the Blendtec Blenders with a motor that, even under ideal conditions, cannot operate anywhere near the stated horsepower and/or peak horsepower.

73. Plaintiff and the members of the Class were injured and entitled to revocation of their acceptance as a direct and proximate result of Defendant's breach through its failure to deliver goods in conformance with promised product specifications because: (a) they are incapable of performing the same amount of useful work as machines actually meeting the promised specifications; (b) they paid a price premium for the Blendtec Blenders; and (c) the Blendtec Blenders did not have the quality or value as promised.

## COUNT VI
## BREACH OF IMPLIED WARRANTY
**(By the Class Against Blendtec)**

74. Plaintiff adopts and incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

75. A warranty of merchantability is implied by law in sales of goods such as the blenders forming the subject matter of this case, and warrants that such goods pass without objection into the trade for the sale of such goods and that they conform to the representations made on the packaging.

76. Plaintiff and the members of the Class were injured as a direct and proximate result of Defendant's breach because: (a) the Blenders are incapable of performing the same amount of useful work as machines actually meeting the promised specifications; (b) they paid a price premium for the Blendtec Blenders; and (c) the Blendtec Blenders did not have the quality or value as promised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

A. For an order certifying the national Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representative and his attorneys as Class Counsel to represent the Class members;

B. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C. For an order declaring that Defendant's conduct violates the statutes referenced herein;

D. For an order awarding compensatory, multiple, and/or punitive damages in amounts to be determined by the Court and/or jury;

E. For an order awarding the Plaintiff and the Class revocation of their acceptance of Defendant's noncompliant goods;

F. For prejudgment interest on all amounts awarded;

G. For an order of restitution and all other forms of equitable monetary relief;

H. For injunctive relief as the Court may deem proper; and

I. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated: April 13, 2018

/s/ Jon V. Harper

**HARPER LAW, PLC**
Jon V. Harper
Denise Dalton
P.O. Box 581468
Salt Lake City, Utah 84158
Tel: (801) 910-4357
Email: jharper@jonharperlaw.com

**LAX LLP**
Robert I. Lax
380 Lexington Avenue, 31st Floor
New York, New York 10168
Tel: (212) 818-9150
Fax: (212) 208-4309
Email: rlax@lax-law.com

**BARON & HERSKOWITZ**
Jon Herskowitz
9100 S. Dadeland Blvd., Suite 1704
Miami, Florida 33156
Tel: (305) 670-0101
Fax: (305) 670-2393
Email: jon@bhfloridalaw.com

**WALSH PLLC**
Bonner C. Walsh
1561 Long Haul Road
Grangeville, Idaho 83530
Tel: (541) 359-2827

Fax: (866) 503-8206
Email: bonner@walshpllc.com

**MILBERG TADLER PHILLIPS GROSSMAN LLP**.
Sanford P. Dumain
Jennifer Czeisler
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229
Email: SDumain@milberg.com

**THE SULTZER LAW GROUP**
Adam Gonnelli
280 Rt. 35
Suite 304
Red Bank, NJ 07701
Tel: (845) 483-7100
Fax: (888) 749-7747
Email: gonnellia@thesultzerlawgroup.com

**LITE DEPALMA GREENBERG LLC**
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Tel: (973) 877-3820
Fax: (973) 623-0858
Email: BGreenberg@litedepalma.com

Attorneys for Plaintiff Alejandro Callegari