IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ALEJANDRO CALLEGARI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLENDTEC, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br><br>Case No. 2:18-cv-308-DB<br><br>District Judge Dee Benson |

Before the court is Defendant's Motion to Dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 17.) The Motion has been fully briefed by the parties, and the court has considered the facts and arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

FACTS

The court, as it must, accepts all well-pleaded factual allegations in the Complaint as true for purposes of Defendant's motion. *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009).

Defendant Blendtec, Inc. ("Blendtec") sells a series of blenders, which it markets under its Blendtec trademark. (Complaint, Dkt. No. 2, ¶ 2.) On its website, marketing materials, and product packaging, Blendtec makes representations about the "horsepower"—or "HP"—of its blenders. (*Id.* ¶¶ 3-4.) Blendtec claims the horsepower of each blender falls between 3.0 and 3.8 HP. (*Id.* ¶ 3.)

Prior to filing the Complaint, Plaintiff retained electrical and mechanical engineers to conduct power tests on Blendtec's blenders in their laboratories. (*Id.* ¶ 22.) None of the blenders tested by Plaintiff's consultants exceeded more than 25% of the power output claimed by Blendtec. (*Id.* ¶ 23.)

The named Plaintiff, Mr. Callegari, purchased a "Blendtec Classic 475 120v Blender" "online" in July of 2017. (*Id.* ¶ 10.) Mr. Callegari relied on Blendtec's horsepower representations when making the purchase. (*Id.*) Upon using the blender, Mr. Callegari believed, based on his observations, that the blender was under-powered as compared to the horsepower claims made by Blendtec. (*Id.*) Had Mr. Callegari known that the blender was not as powerful as advertised, he would not have purchased it, or would not have paid as much for it as he did. (*Id.*)

Plaintiff brought this suit on behalf of himself and similarly-situated purchasers of Blendtec blenders. (*Id.* ¶ 1.) In his first cause of action, Plaintiff alleged that Blendtec misrepresented the "performance characteristics", "standard", and "grade" of its blenders, in violation of the Utah Consumer Sales Practices Act ("UCSPA"). (*Id.* ¶¶ 38-47.) In his second cause of action, Plaintiff alleged that Blendtec's horsepower representations were express warranties, which Blendtec breached pursuant to U.C.A. §§ 70A-2-313 and 70A-2A-210. (*Id.* ¶¶ 48-53.) In his third cause of action, Plaintiff alleged that Blendtec's blenders did not conform to the representations on their packaging, thus breaching the implied warranty of merchantability pursuant to U.C.A. §§ 70A-2-314 and 70A-2A-212. (*Id.* ¶¶ 54-61.) In his fourth cause of action, Plaintiff alleged a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., premised on Blendtec's breach of express written warranties. (*Id.* ¶¶ 62-68.) In his fifth and sixth

causes of action, Plaintiff alleged a breach of express and implied warranty, presumably pursuant to common law principles. (*Id.* ¶¶ 69-76.)

DISCUSSION

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). Under Rule 12(b)(6), the court must accept all well-pleaded allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).

The Court must limit its consideration to the four corners of the Complaint, and any documents attached thereto, and any external documents that are referenced in the Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, constitutes facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In most civil actions, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). However, where a

UCSPA claim "arises out of allegations of deception, false misrepresentations and omissions," it is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Jackson v. Philip Morris Inc.*, 46 F. Supp. 2d 1217, 1222 (D. Utah 1998). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Wood v. World Wide Ass'n of Specialty Programs and Schools, Inc.*, 2007 WL 1295994, at *1 (D. Utah April 30, 2007).

*First Cause of Action: Violation of UCSPA*

Defendant first seeks to dismiss Plaintiff's claim for damages under the UCSPA, arguing that the claim does not meet the statutory requirements for pleading a class action for damages under the statute and that Plaintiff has failed to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). (Dkt. No. 17.)

1. UCSPA Class Action Pleading Requirements

The UCSPA states that a consumer may bring a class action for damages only under limited circumstances. Plaintiff relies on the provision of the UCSPA allowing class action claims for damages "caused by an act or practice specified as violating this chapter by a rule adopted by the enforcing authority under Subsection 13-11-8(2) before the consumer transactions on which the action is based …." Utah Code Ann. § 13-11-19(4)(a). Plaintiff asserts that the rule "adopted by the enforcing authority under Subsection13-11-8(2)" relevant here is

found in the Utah Administrative Code R152-11-3. (Dkt. No. 18.) That Rule, entitled "Bait Advertising/ Unavailability of Goods," reads as follows:

> B. It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to offer to sell consumer commodities when the offer is not a bona fide effort to sell the advertised consumer commodities. An offer is not bona fide if:
>
> (1) A supplier uses a statement or illustration in any advertisement which would create in the mind of a reasonable consumer a false impression of the grade, quality, quantity, make, value, model, year, size, color, usability, or origin of the consumer commodities offered or which otherwise misrepresents the consumer commodities in such a manner that, on subsequent disclosure or discovery of the true facts, the consumer is diverted from the advertised consumer commodities to other consumer commodities. An offer is not bona fide, even though the true facts are made known to the consumer before he views the advertised consumer commodities, if the first contact or interview is secured by deception.

UAC R152-11-3.

Plaintiff did not include any reference to R152-11-3 in his Complaint. Plaintiff alleged that he was offered a "powerfully advanced" blender with a horsepower between 3.0 and 3.8 HP, but that when he tested the blender, it fell far short of the horsepower claims on the product's packaging and Blendtec's website. (Compl. ¶ 3.) Plaintiff also alleged that Defendant misrepresented the "performance characteristics", "standard", and "grade" of its blenders. (*Id.* ¶ 45.) However, Plaintiff did not allege that he was diverted from the product advertised by Blendtec to some other product. He only stated that he would not have purchased the product, or would have paid less for it, had he known that the blender was not as powerful as advertised. (*Id.* ¶ 10.)

R152-11-3 is a prohibition against bait and switch advertising tactics. It is labeled as such, and it requires that a consumer be "diverted from the advertised consumer commodities to other consumer commodities" for a seller's conduct to violate the rule. Plaintiff did not allege

bait and switch tactics in his Complaint, nor does he provide any additional facts in his briefing to show that a bait and switch occurred. Plaintiff alleged false advertising, which he believes caused damages to a class of consumers. But the facts alleged by Plaintiff do not constitute the bait and switch advertising tactics prohibited by R152-11-3.

Plaintiff has also failed to plead or provide to the court any other applicable rule that Blendtec may have violated. Accordingly, Plaintiff has failed to plead damages "caused by an act or practice specified as violating this chapter by a rule adopted by the enforcing authority" required to bring a class action for damages under the UCSPA. Plaintiff has not alleged or relied upon any of the other limited circumstances allowing a plaintiff to bring a class action for damages under the UCSPA. Thus, Plaintiff has not met the requirements for pleading a class action for damages under the UCSPA.

Having so decided, the court must now determine whether the class action pleading requirements of the UCSPA are preempted by Rule 23 of the Federal Rules of Civil Procedure. In *Shady Grove Orthopedic Assoc., P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), the Supreme Court issued a plurality opinion addressing the applicability of a federal rule in a diversity suit where a potentially conflicting state rule exists. The two-step analysis set forth by the concurrence requires the court to first determine "whether the scope of the federal rule is 'sufficiently broad' to 'control the issue' before the court, 'thereby leaving no room for the operation' of seemingly conflicting state law." *Shady Grove*, 559 U.S. at 421. "When conducting this analysis, the Federal Rules should be given their plain meaning." *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162-63 (10th Cir. 2017). The court must "consider whether the rule can reasonably be interpreted to avoid [abridging, enlarging, or modifying a state substantive

right]." *Shady Grove*, 559 U.S. at 422-23. "There is a conflict only if there is a 'direct collision' between federal and state law—one that is 'unavoidable.'" *Racher*, 871 F.3d 1163 (citations omitted). "If the state and federal rules 'can exist side by side, ... each controlling its own intended sphere of coverage,' there is no conflict." *Id.*

Here, the court finds no conflict between Federal Rule of Civil Procedure 23 and Utah Code Ann. § 13-11-19(4)(a). The language of Rule 23 may be read to be permissive: "a class action *may* be maintained…." Fed. R. Civ Proc. 23 (emphasis added); *see In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices & Prods. Liab. Litig.*, 288 F. Supp. 3d 1087, 1254-55 (D.N.M. 2017). Rule 23 does not explicitly set forth exclusive procedural requirements for maintaining a class action. Accordingly, in light of the court's directive to avoid collision where possible, Rule 23 and § 13-11-19(4)(a) are not in direct conflict and may be enforced side by side.

Having found no direct conflict between the state and federal rules, the court need not proceed under the *Shady Grove* analysis and must instead proceed under the doctrine set forth in *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). *See Racher*, 871 F.3d at 1163. "In diversity cases, the *Erie* doctrine instructs that federal courts must apply state substantive law and federal procedural law." *Id.* at 1162. To determine whether a state law is substantive or procedural, the court "must decide whether applying the law will significantly affect the outcome of the litigation." *Id.* at 1164. A substantive state law "bears on a State-created right vitally and not merely formally or negligibly," or "intimately affect[s] recovery or non-recovery." *Id.* Even "applicable burdens, defenses, and limitations" may be substantive where "state law creates a cause of action [and] defines the scope of that cause of action." *Id.* at 1164-65.

Here, the court finds that pleading a violation of a rule as described in the UCSPA in order to maintain a class action for damages is substantive law under the *Erie* doctrine. Allowing class actions

for damages to proceed without first requiring a showing that the alleged misconduct was "an act or practice specified as violating [the UCSPA] by a rule adopted by the enforcing authority" would dramatically expand the scope of class actions allowed under the UCSPA. In many cases, the availability of a class action mechanism significantly affects recovery or non-recovery as a practical matter. Furthermore, the state legislature specifically set forth the rights and remedies available under the UCSPA and the limited circumstances under which a class action for damages would be allowed. "Failing to enforce such attendant attributes of a state law would lead to different measures of the substantive rights enforced in state and federal courts, contrary to *Erie*'s command. The result would be an 'inequitable administration' of the law." *Racher*, 871 F.3d at 1165 (citations omitted).

Because the requirement that a plaintiff allege "an act or practice specified as violating [the UCSPA] by a rule adopted by the enforcing authority" is a substantive state law, it must be enforced in this case in order to avoid inequitable administration of the law. Accordingly, Plaintiff's class action claim for damages under the UCSPA is dismissed for failure to plead "an act or practice specified as violating [the UCSPA] by a rule adopted by the enforcing authority."

2. Rule 9(a) Pleading Requirements

Even assuming that Plaintiff could satisfy the UCSPA requirements for pleading a class action for damages, Plaintiff's UCSPA claims would nevertheless fail for failure to comply with Federal Rule of Civil Procedure 9(b). When a Complaint "alleges the kind of misrepresentations, omissions, or other deceptions covered by the term 'fraud' in its broadest dimension," it must satisfy the heightened pleading requirements of Rule 9(b). *Williams v. State Farm Ins. Co.,* 656 P.2d 966, 972 (Utah 1982); *see also Goodwin v. Hole No. 4, LLC*, No. 2:06-cv-00679, 2006 U.S. Dist. LEXIS 86157, at *24 (D. Utah Nov. 15, 2006)(Cassell, P.) ("Allegations of deception under the UCSPA fall within Rule 9(b)'s requirement of pleading with particularity."). Plaintiff

here alleges that Defendant deceived consumers by making misrepresentations on packaging and on its website about the horsepower of its blenders. His pleading must, therefore, meet the heightened pleading standard of Rule 9(b).

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the representations and the consequences thereof." *Wood v. World Wide Ass'n of Specialty Programs and Schools, Inc.*, 2007 WL 1295994, at *1 (D. Utah April 30, 2007) (Stewart, J.) (internal quotation marks omitted).

Here, Plaintiff alleged that Blendtec made representations that the "horsepower"—or "HP"—of its blenders fell between 3.0 and 3.8 HP, on "its product packaging, in its point of sale and marketing materials, and on Blendtec's website." (*Id.* ¶¶ 3-4.) Plaintiff also alleged that those horsepower representations were false, based on his testing of "Blendtec's Blenders." (*Id.* ¶ 6.) The named Plaintiff, Mr. Callegari, purchased a "'Blendtec Classic 475 120v Blender' online" in July of 2017. (*Id.* ¶ 10.) Plaintiff alleged that "the product packaging of each and every Blendtec Blender" includes "specific 'Peak HP' claims" and that Mr. Callegari "relied on the representations on the Blender's packaging and on Blendtec's website about the Blender's horsepower" when making his blender purchase. (*Id.* ¶¶ 10, 15.) Plaintiff further alleged that "[h]ad Mr. Callegari known that the horsepower representations were false and that the Blender was not as powerful as advertised and represented, he would not have purchased the Blender or paid as much as he did for it." (*Id.*)

9

The Complaint did not identify where Mr. Callegari purchased his blender (other than that it was an "online" purchase) or where he observed the allegedly false statements prior to the purchase (only that "each and every" blender package contained horsepower representations). Plaintiff also failed to allege any specific misrepresentations made about the blender Mr. Callegari purchased—the Blendtec Classic 475 120v Blender. Although the Complaint included photographs of the packaging of some Blendtec blenders, they are devoid of any specific reference to the Blendtec Classic 475 120v Blender. (*See id.* ¶ 15.) Dates and times of the allegedly misleading statements at issue are also absent from the Complaint—other than the inclusion of a general allegation that Mr. Callegari purchased his blender "in July of 2017." (*Id.* ¶ 10.)

Plaintiff's broad assertions regarding the packaging and advertisements of Defendant's products generally are insufficient to satisfy Rule 9(b). The Complaint did not specifically set forth the "who, what, when, where and how" of Mr. Callegari's purchase, or of any specific blender. Rather, Plaintiff made general statements regarding Defendant's advertising practices with respect to all of its blenders. Such generalizations are insufficient to satisfy the heightened pleading standards of Rule 9. Accordingly, even assuming that Plaintiff could satisfy the class action pleading requirements of the UCSPA, his UCSPA claim is properly dismissed for failure to satisfy Rule 9(b).

*Second and Third Causes of Action: Breach of Warranty under the Utah UCC*

Defendant next seeks to dismiss Plaintiff's Breach of Express and Implied Warranty Claims under the Utah Uniform Commercial Code ("Utah UCC") for failure to comply with the notice requirements of the statute. (Dkt. No. 17 at 10-12.) The Utah UCC provides that "[w]here

a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Utah Code Ann. § 70A-2-607(3)(a). Thus, "a buyer's ability to recover damages for a seller's breach, when the goods have been accepted, is limited by the notification requirements of § 70A–2–607(3)." *Salt Lake City Corp. v. Kasler Corp.*, 855 F. Supp. 1560, 1567 (D. Utah 1994); *c.f. Mawhinney v. Jensen*, 120 Utah 142, 154, 232 P.2d 769, 776 (Utah 1951) ("timely notice is a vital condition precedent to an action for breach of warranty.").

The Complaint made no mention of §70A-2-607. Plaintiff argues, however, that the notice requirements have been satisfied because "Blendtec had both actual knowledge of the falsity of its horsepower representations and had, at a minimum, reason to know that its horsepower claims were greatly inflated." (Dkt. No. 18 at 10-11.) Plaintiff has provided no case law to support his position that knowledge of the falsity of statements is sufficient to satisfy the notice requirements of §70A-2-607.

Rather, in support of this argument, Plaintiff cites to Utah Code Ann. § 70A-1a-202, which states that "a person has 'notice' of a fact if the person (a) has actual knowledge of it; (b) has received a notice or notification of it; or (c) from all the facts and circumstances known to the person at the time in question, has reasons to know that it exists." While Plaintiff has correctly identified a general statement of law regarding notice in the state of Utah, the more specific language of §70A-2-607 precludes its application. Section 70A-2-607 requires that "*the buyer* must … notify the seller of breach or be barred from any remedy." Utah Code Ann. § 70A-2-607(3)(a) (emphasis added). Section 70A-2-607 places an affirmative burden on a would-be

plaintiff prior to his filing suit, rather than merely requiring that a defendant be on notice of a breach.

Plaintiff has not alleged that he gave Defendant notice of the alleged breach of express or implied warranty. Accordingly, Plaintiff's claims for breach of express and implied warranty under the Utah UCC are dismissed for failure to comply with the notice requirements of Utah Code Ann. §70A-2-607(3)(a).

*Fifth and Sixth Causes of Action: Breach of Express and Implied Warranty*

Defendant next moves to dismiss Plaintiff's fifth and sixth causes of action for breach of common law express and implied warranties. The Utah UCC was enacted to "simplify, clarify, and modernize the law governing commercial transactions" as well as to "make uniform the law among the various jurisdictions." Utah Code Ann. § 70A-1a-103. Principles of law or equity in place prior to its enactment remain intact "unless displaced by the particular provisions" of the Utah UCC. *Id.* The Utah UCC specifically addresses express and implied warranties. *See* Utah Code Ann. §§ 70A-2-313; 70A-2A-210; 70A-2-314; 70A-2A-212. Plaintiff has not provided the court with any basis or support upon which to find that those particular provisions do not displace any prior common law claims for breach of express or implied warranty that might otherwise apply here. Accordingly, the court finds that the common law breach of warranty claims pled by Plaintiff are barred by the Utah UCC.

*Fourth Cause of Action: Breach of Warranty under the Magnuson-Moss Warranty Act*

Finally, Plaintiff's fourth cause of action is a claim of breach of warranty pursuant to the Magnuson-Moss Warranty Act ("MMWA"). Plaintiff concedes that this claim is dependent upon a valid state law warranty claim. *See Spence v. Basic Research,* No. 2:16-CV-925-CW, 2018 WL

1997310, at *5 (D. Utah Apr. 27, 2018). Because the court has dismissed Plaintiff's breach of warranty claims, Plaintiff's MMWA must be dismissed as well.

## CONCLUSION

For the reasons articulated in this Memorandum Decision and Order, Defendant's Motion to Dismiss is hereby GRANTED.

DATED this 6th day of November, 2018.

BY THE COURT:

Dee Benson
United States District Judge